IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MARK INGRAM, Individually and          *
as Personal Representative of          *
the Estate of Kellie Ingram,           *
                                       *
        Plaintiff,                     *
                                       *
        v.                             *          1:14-cv-142
                                       *
AAA COOPER TRANSPORTATION,             *
INC.,                                  *
                                       *
        Defendant.                     *
                                       *

---

O R D E R

---

At issue in this Order are positions taken by Plaintiffs

Mark Ingram and Kellie Ingram in two proceedings.  The first

proceeding is Plaintiff's bankruptcy case, which was pending

from January 2008 through May 2013 in the United States

Bankruptcy Court for the District of South Carolina.  The second

is the present litigation, in which Plaintiffs seek to recover

on Mark Ingram's loss of consortium claim and on Kellie Ingram's

personal injury claims.[1]

Presently before the Court is Defendant's "Motion to

Dismiss, or in the Alternative Motion for Summary Judgment"

---

[1] Both the bankruptcy case and the present litigation were filed
by Mark Ingram and Kellie Ingram.  Kellie Ingram is now deceased, and
this Court substituted Mark Ingram on behalf of Kellie Ingram's
Estate.  To maintain consistency, throughout this Order, the Court
refers to Plaintiffs in plural with respect to both the current
proceeding and the bankruptcy case.

based on the doctrine of judicial estoppel. (Doc. 26). Defendant argues that Plaintiffs are estopped from asserting their claims in the present litigation because of their failure to disclose the existence of the claims as assets in their prior bankruptcy case. (Def.'s Br., Doc. 26-1 at 4). Under Georgia law, judicial estoppel is a matter for summary judgment, and the Court considers Defendant's motion as such. <u>Southmark Corp. v. Trotter, et al.</u>, 442 S.E.2d 265, 266 (Ga. Ct. App. 1994). For the reasons discussed below, the Court **GRANTS** Defendant's motion for summary judgment.

## I.  BACKGROUND

The material facts are not in dispute and establish the following.

In January 2008, Plaintiffs Kellie and Mark Ingram filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of South Carolina. (Doc. 26, Ex. A). As part of their initial petition, Plaintiff's filed schedules of their real and personal property. (<u>Id.</u> at 12-16). Subsequently, in April and May 2008, Plaintiffs amended their asset schedules. (<u>Id.</u>, Exs. B-C). On June 5, 2008, the Bankruptcy Court confirmed Plaintiffs' Chapter 13 payment plan. (<u>Id.</u>, Ex. D). Post-confirmation, on June 19, 2009, Plaintiffs again amended their asset schedules, and the Bankruptcy Court likewise amended its confirmation order to reflect the change in assets.

While the bankruptcy case remained pending, on June 5, 2012, Kellie Ingram was involved in an automobile accident with an employee of Defendant AAA Cooper Transportation. (Affidavit of Mark Ingram, Doc. 31 at 23). That accident is the subject of the present litigation. Plaintiffs never amended their asset schedules in the bankruptcy proceeding to reflect the potential claim against Defendant.

Meanwhile, Plaintiffs' bankruptcy proceeded apace. On April 30, 2013, the Bankruptcy Court discharged Mark and Kellie Ingram. (Doc. 26, Ex. I). According to the bankruptcy trustee's report, Plaintiffs dispersed $54,176.00 to their creditors, while $55,151.62 in debts was discharged without payment. (Id., Ex. H). On May 9, 2013, the Bankruptcy Court closed Plaintiffs' case.

In May 2014, Plaintiffs filed the present litigation in the State Court of Richmond County, Georgia against Defendant asserting Plaintiff Kellie Ingram's claims for personal injuries and Plaintiff Mark Ingram's loss of consortium claim. (Doc. 1, Ex. 1). On June 23, Defendant removed the case to this Court. (Doc. 1).

During the deposition of Mark Ingram, Defendant learned of Plaintiffs' prior bankruptcy and that Plaintiffs' claims against Defendant were not among Plaintiffs' sworn assets. (Doc. 37, Ex. 1 at 2). Defendant then informed Plaintiffs' counsel of its intent to file a motion for summary judgment asserting judicial

estoppel for taking an inconsistent position as to the existence of these claims in the bankruptcy proceeding. (Doc. 26, Ex. L).

On March 13, 2015, Plaintiffs filed a motion in the Bankruptcy Court to reopen the bankruptcy case and amend their schedule of assets to include Mark Ingram's loss of consortium claim and the claims for personnel injuries held by the Estate of Kellie Ingram. (Doc. 26, Ex. K). Before the Bankruptcy Court ruled on Plaintiffs' motion, Defendant filed its "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Brief in Support on the grounds of judicial estoppel" in this case. (Doc. 26). The Bankruptcy Court subsequently denied Mark Ingram's motion to reopen the bankruptcy proceeding, reasoning that, because 11 U.S.C. § 1322(d) and § 1329(c) limit creditors' ability to receive payments from debtors to five years, Plaintiffs' creditors stood to gain nothing from reopening the proceedings. (Doc. 40, Ex. A at 7-8).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving

party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways: by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex, 477 U.S. 317). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiffs notice of Defendant's motion for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of

6

default.   (Doc. 27.)   The notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), therefore, are satisfied and the motion is ripe for review.

## III.   DISCUSSION

Defendants argue that Plaintiffs' claims are barred by the doctrine of judicial estoppel because they failed to disclose the potential claims as assets during their Chapter 13 bankruptcy case.   Plaintiffs counter that, under Georgia law, a party is not judicially estopped if they move to reopen a bankruptcy proceeding and amend an asset disclosure.   Having done so, Plaintiffs contend judicial estoppel does not apply, notwithstanding that their motion to reopen and amend was ultimately unsuccessful.

The Court begins by discussing the bankruptcy laws that are relevant to Defendant's judicial estoppel motion.   This includes a discussion of bankruptcy law generally and also a more particular examination of Plaintiffs' motion to reopen and the Bankruptcy Court's denial of that motion.   With that analysis in hand, the Court turns to the judicial estoppel question.

## A.   Relevant Bankruptcy Law

The Court begins with a general overview of the bankruptcy laws relevant to this case.   Unlike Chapter 7, which serves to liquidate a debtor's assets, Chapter 13 of the Bankruptcy Code

serves a reorganization purpose. In *In re Waldron*, 536 F.3d 1239, 1244 (11th Cir. 2008), the Eleventh Circuit explained how 13 U.S.C. § 1306(a) and § 1327(b) interact to form estate property and debtor property. Upon petitioning for bankruptcy, § 1306(a) vests the petitioner's property in the bankruptcy estate. *Id.* at 1241. Then, upon confirmation of the petitioner's plan, § 1327(b) "returns some property of the estate to the debtor . . . '[e]except as otherwise provided in the plan or the order confirming the plan.'" *Id.* at 1242 (quoting 13 U.S.C. § 1327(b)). Crucially, the Eleventh Circuit held that any assets acquired after confirmation remain part of the estate property pursuant to § 1306(a). *Id.* at 1243. Thus, *Waldron* explicitly held that a debtor's claims for legal relief of all types that arise after the confirmation of a Chapter 13 plan but before the completion of the plan are property of the bankruptcy estate. *See id.* at 1241-43, 1245.[2]

Chapter 13 would, of course, be largely a dead letter were petitioners not required to disclose their assets to the bankruptcy court and their creditors. "Full and honest disclosure in a bankruptcy case is crucial to the effective

---

[2] As the Eleventh Circuit noted in *Waldron*, whether post-confirmation assets remain part of the bankruptcy estate or are returned to the petitioner is subject to a circuit split. 536 F.3d at 1241-43. In Plaintiffs' own bankruptcy case, the Bankruptcy Court noted the existence of the split, but found it unnecessary to engage in that question because petitioner's plan and the confirmation order provided that "property of the estate does not vest in the debtor until the closing of the case." (Doc. 31).

functioning of the federal bankruptcy system." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002)(internal quotations omitted). "A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court." Id. (citing 11 U.S.C. §§ 521(1), 541(a)(7)). The disclosure of such "assets gives the trustee and creditors a meaningful right to request . . . a modification of the debtor's plan to pay his creditors," Waldron, 536 F.3d at 1245, or grant the trustee an opportunity to "to settle the claims and obtain money for the creditors." Brown v. Winn-Dixie Stores, Inc., No. 2:14-cv-052, 2015 WL 3448614, at *7 (S.D. Ga. May 20, 2015). Further, "[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." Burnes, 291 F.3d at 1286.

Additionally, bankruptcy courts may not confirm or modify a Chapter 13 payment plan to require payments over a period greater than five years. 11 U.S.C. § 1322(d); 11 U.S.C. § 1329(c). As noted by the Bankruptcy Court, Congress amended Chapter 13 to include this five-year limitation period to "provide the relief and fresh start for the debtor that is the essence of modern bankruptcy law." H.R. Rep. No. 595, 95th Cong. 1st Sess. 117 (1977).

With that, the Court now turns to the bankruptcy proceedings relevant to this motion. Plaintiffs filed for

Bankruptcy on January 31, 2008. In April and May, Plaintiffs amended their asset schedules. On June 5, the Bankruptcy Court confirmed Plaintiffs' Chapter 13 plan. Post-confirmation, on June 24, 2008, Plaintiffs again amended their schedule of assets, which the Bankruptcy Court confirmed a month later. In June 2012, the accident giving rise to Plaintiffs' claims occurred. Plaintiffs never amended their asset schedule.

Upon learning of Defendant's intent to seek judicial estoppel in this litigation, Plaintiffs moved in the Bankruptcy Court to reopen their bankruptcy case to amend their asset disclosure. As mentioned above, the Bankruptcy Court denied their motion. In its well-reasoned order, the Bankruptcy Court acknowledged that "[t]he proper inquiry focuses on the effect of reopening the case on the creditors. If the reopening will have no effect on the estate or creditors, and no further administration would be necessary, then the motion to reopen should be denied." (Doc. 31, Ex. 1 at 4) (citing In re Apex Oil Co., 406 F.3d 538, 543 (8th Cir. 2005)). The Court found, however, that the five-year limitation period, which coincided approximately with the closing of the case in 2013, prohibited any distribution to creditors. (Id. at 7). Thus, there was no potential benefit to the creditors in reopening. On that basis, the Court denied Plaintiffs' motion to reopen. (Id. at 7-8).

The result of the bankruptcy proceedings is now clear: Plaintiffs' potential claims against Defendant were estate

property under their plan, and they had a continuing duty to disclose their claims to the Bankruptcy Court from the time the claims arose in June 2012 until their bankruptcy case closed in May 2013. And, finally, because they attempted to reopen and amend after the close of the five-year limitation period, their payment plan could not be modified to benefit their creditors, resulting in the Bankruptcy Court denying Plaintiffs' motion to reopen and amend. Plaintiffs therefore failed to comply with their duty to disclose their claims against Defendant. Had Plaintiffs disclosed the claim, their creditors or the bankruptcy trustee may have moved to amend the Chapter 13 payment plan to reflect this new asset. See Waldron, 536 F.3d at 1244 (noting that 11 U.S.C. § 1329(a) allows trustees and unsecured creditors to move to modify the plan to, inter alia, increase payments or extend the plan's time for payments). As it stands, Plaintiffs were able to discharge $55,151.62 in unsecured claims.

## B.    Judicial Estoppel

In a diversity action, the application of judicial estoppel is a matter of state law. Original Appalachian Artworks, Inc. v. S. Diamond Associates, Inc., 44 F.3d 925, 930 (11th Cir. 1995). Prior to 1994, the doctrine of judicial estoppel was evidently unknown to Georgia law. In 1994, Georgia's first foray into this field began explicitly as a way of applying the

federal doctrine of judicial estoppel in an effort to effectuate the decisions of bankruptcy courts. <u>See</u> <u>Southmark Corp. v. Trotter, Smith & Jacobs</u>, 442 S.E.2d 265, 266 (Ga. Ct. App. 1994). As the Court discusses in greater detail below, since <u>Southmark</u>, the application of judicial estoppel in Georgia and federal courts has diverged.

Under Georgia law, the doctrine of judicial estoppel "precludes a party from asserting a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding." <u>Coachran v. Emory University</u>, 555 S.E.2d 96, 98 (Ga. Ct. App. 2001) (quoting <u>Wolfork v. Tackett</u>, 540 S.E.2d 611, 612 (Ga. Ct. App. 2001)). "[T]he essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary." <u>Southmark</u>, 442 S.E.2d at 267 (citations and punctuation omitted). "The doctrine is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings and is designed to prevent parties from making a mockery of justice through inconsistent pleadings." <u>Johnson v. Trust Co. Bank</u>, 478 S.E.2d 629 (Ga. Ct. App. 1996)(citations and punctuation omitted).

Georgia courts have frequently applied judicial estoppel where a party fails to disclose a potential claim among their assets in a bankruptcy proceeding. See, e.g., Reagan v. Lynch, 524 S.E.2d 510 (Ga. Ct. App. 1999). These courts have reasoned that "[c]ompliance with disclosure requirements is essential to maintaining a bankruptcy case. In light of the stringent disclosure requirements under Chapter 11, the failure to disclose such information is viewed as amounting to a denial that such claims exist." Southmark, 442 S.E.2d at 267 (citations omitted). The same is true under Chapter 13. See Byrd v. JRC Towne Lake, Ltd., 484 S.E.2d 309 (Ga. Ct. App. 1997).

As discussed above, Plaintiffs were under a continuing duty to disclose any assets, including potential legal claims, to the Bankruptcy Court and their creditors. During the pendency of their bankruptcy case, Plaintiffs failed to amend their sworn asset disclosures to reflect the existence of their claim against Defendant. Plaintiffs' failure to disclosure their claim "amount[s] to a denial that such claim[] exists." Southmark, 442 S.E.2d at 267. Plaintiffs' pursuit in this Court of a claim, the existence of which they denied to the Bankruptcy Court, constitutes an inconsistent position. Id.

There is, however, one frequently litigated difference between Georgia's judicial estoppel and its federal counterpart that allows a party to remedy its previously inconsistent

position.    Under Georgia law, where a party amends their bankruptcy court filings to reflect the potential claim, summary judgment on judicial estoppel grounds is not warranted.    See Clark v. Perino, 509 S.E.2d 707 (Ga. Ct. App. 1998); Johnson v. Trust Co. Bank, 478 S.E.2d 629 (Ga. Ct. App. 1996).    Unlike courts in the Eleventh Circuit, see Barger v. City of Cartersville, Georgia, 348 F.3d 1289, 1297 (11th Cir. 2003), Georgia applies this exception even when the debtor amends only after the threat of judicial estoppel in the subsequent litigation.    See Rowan v. George H. Green Oil, Inc., 572 S.E.2d 338, 339 (Ga. Ct. App. 2002); Tuten v. Target Corp., No. 4:14-cv-3, 2014 WL 69088866, at *2-3 (S.D. Ga. Dec. 8, 2014). Moreover, the Georgia Court of Appeals has at least suggested that simply moving to amend or reopen, whether eventually successful or not, may be sufficient to avoid judicial estoppel. See Rowan, 572 S.E.2d at 339.

Plaintiffs argue that this exception applies here.    By virtue of moving to reopen the bankruptcy case, Plaintiffs have, they contend, cured their previously inconsistent position. There is some merit to Plaintiffs' argument.    As mentioned above, Georgia courts have often framed the application of the exception in terms of whether the party has moved to amend rather than whether the party has, in fact, amended their asset disclosure.    Additionally, Plaintiffs' view is arguably compatible with the policy rationale motivating judicial

14

estoppel. By moving to amend or reopen, Plaintiffs, in a sense, attempted to change its position in the bankruptcy case and arguably have no longer taken an inconsistent position in a judicial proceeding.

In its brief, Defendant argues that Georgia law only protects plaintiffs who have <u>successfully</u> amended their asset disclosures in the bankruptcy proceeding and that those who have only moved to amend or moved to reopen a bankruptcy proceeding remain subject to judicial estoppel in pending litigation on undisclosed claims. Defendant reaches this conclusion by analyzing Georgia cases and determining that any suggestion that merely moving to amend or reopen is sufficient occurred in *dicta*.

After reviewing the Georgia Court of Appeals's numerous judicial estoppel cases, the Court is convinced that *dictum* supporting both parties' positions exists. For every reference to "moving to amend" defeating judicial estoppel, there are equal references to "amends." <u>Compare, e.g.</u>, <u>Jowers v. Arthur</u>, 537 S.E.2d 200, 201-02 (Ga. Ct. App. 2000)("[W]hen we have applied judicial estoppel to bar a claim, there has been no evidence that the plaintiff ever <u>attempted to amend</u> his bankruptcy pleadings to include the tort claim.")(emphasis added) <u>with</u> <u>id.</u> at 202 ("[I]f the bankruptcy court <u>permits an amendment</u> allowing an omitted tort claim, it stands to reason that the Georgia court in which the tort claim is asserted

15

should honor the bankruptcy court's actions.")(emphasis added).
But, as Defendant argues, the Court has not found where a
Georgia court held that moving to amend, standing alone, was
either sufficient or insufficient to defeat judicial estoppel.
That question appears to remain open.

That said, this Court need not address whether making a
motion alone is sufficient. The Bankruptcy Court's denial of
Plaintiffs' motion to reopen and amend is a significant
distinction between the present case and a case where a motion
to amend or reopen remains pending. Significantly, the
Bankruptcy Court found that the five-year limitation period
prohibited approval of any extension of a payment plan and that
reopening would therefore not be of any benefit to Plaintiffs'
creditors. Accordingly, Plaintiffs have been unsuccessful in
amending their previous position in the bankruptcy proceeding.

As Georgia courts have recognized, successfully amending an
asset disclosure is, in essence, a way of retracting an earlier
position. See Cochran, 555 S.E.2d at 99 ("[W]hen a plaintiff
has successfully amended her petition to include any claim
against the defendant as a potential asset . . ., it cannot be
said that the present position in the trial court is
inconsistent with the position asserted by plaintiff in a prior
proceeding and, therefore, judicial estoppel does not bar her
claim." (emphasis added)). The opposite is true here.
Plaintiffs' failure to reopen the bankruptcy proceedings sets

their position, as reflected on their asset disclosure, in stone. It is also no matter that Plaintiffs attempted, albeit unsuccessfully, to reopen the proceedings. While it may be true in some sense that once the motion to reopen and amend was made Plaintiffs were immediately asserting a consistent position in both proceedings, the reality is that they have successfully and, upon the Bankruptcy Court's denial, conclusively used the bankruptcy proceedings to extinguish their creditors' claims. Plaintiffs' position in the bankruptcy proceeding is contained in their asset schedules, which lack the present claims.

Having failed to amend their asset schedules, Plaintiffs' current inconsistent positions in the two proceedings makes a mockery of the justice system. This is particularly true because of the Bankruptcy Court's specific reason for not reopening. The five-year limitation period allowed Plaintiffs to extinguish their creditors' claims and to move on with their lives. Though they may have tried to amend their asset disclosures, their attempt to reopen was unsuccessful, the bankruptcy proceeding remains closed, their position in the now-complete bankruptcy remains one of non-disclosure, and all of this worked to Plaintiffs' substantial benefit and to the prejudice of Plaintiffs' creditors.

To conclude otherwise would lead to perverse outcomes. Many debtors have potential claims accrue after confirmation of an asset distribution plan. It is easy to imagine these debtors

failing to disclose their claims during the pendency of the bankruptcy proceeding and during the five-year limitation period. Cf. Waldron, 536 F.3d at 1245 ("If post-confirmation assets were not subject to disclosure, modifications for increased payments would be rare because few debtors would voluntarily disclose new assets . . . ."). Once the bankruptcy case has closed and the five-year limitation period has passed, these debtors could file their claims with confidence, knowing that they could defeat a judicial estoppel motion by moving to the reopen the bankruptcy case, while resting assured that a bankruptcy court would deny the motion based on the five-year limitation period. To execute such a scheme, debtor-plaintiffs would only need the slightest window between their claims' statutes of limitations and the five-year bankruptcy limitation period.

With that in mind, it is clear that this case goes to the heart of the "essential function and justification of judicial estoppel." CSX Transp., Inc. v. Howell, 675 S.E.2d 306, 308 (Ga. Ct. App. 2009). As the Georgia Court of Appeals has acknowledged, Georgia courts "apply federal law [of judicial estoppel] in order to give the proper effect to the judgment of the bankruptcy court . . . . The goal is to afford the judgment of the bankruptcy court the same effect here as would result in the court where that judgment was rendered." Southmark, 442 S.E.2d at 266. Consistent with that goal, Georgia courts do not

apply judicial estoppel when a plaintiff successfully amends its bankruptcy filings to reflect its legal claims. Doing so gives effect to the bankruptcy court proceedings. Similarly, applying judicial estoppel where a bankruptcy court has <u>denied</u> a motion to amend or reopen supports "the primary purpose of [judicial estoppel] . . . protecting the integrity of the judiciary." <u>CSX Transp.</u>, 675 S.E.2d at 308.

Where, as here, a plaintiff fails to disclose a potential claim during a bankruptcy case and conclusively fails to reopen the case on the grounds that the five-year limitation period has passed, they have "assert[ed] a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding." <u>Southmark</u>, 442 S.E.2d at 266. Having done so in this case, Plaintiffs are judicially estopped from asserting their claims against Defendant.[3]

---

[3] The Court's decision rests on Plaintiffs' conclusive failure to reopen and amend the bankruptcy case on the grounds that the five-year limitation period has passed. The relevant considerations could be different where a plaintiff has moved to amend or reopen and the motion remains pending in the bankruptcy court. The relevant considerations may also be different had Plaintiffs failed to reopen their bankruptcy court proceeding for different reasons. <u>See</u> <u>In re James</u>, 487 B.R. 587, 594 (Bankr. N.D. Ga. 2013) (finding no motive to conceal a claim where debtors Chapter 13 plan paid creditors 100% of their owed debts).

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment.   The Clerk is **DIRECTED** to **ENTER FINAL JUDGMENT** in favor of Defendant, terminate all deadlines and motions, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___1st___ day of March, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA